UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
JOHN J. FABBRICANTE,

                         Plaintiff,                          MEMORANDUM
                                                              AND ORDER
      -against-                                         01 CV 5575 (CPS) (RML)

THE CITY OF NEW YORK, ROY KATZ, AND
JOSEPH MASTROPIETRO, JOHN SCUPELLITI,
ANTHONY BIANCHIO, BERNARD GELMAN,
JAMES CAMPBELL, DANNIEL WALLEN, JAMES
NICKOL, ALBERT SOMMA individually and in their
official capacity and all those acting in concert with them,

                         Defendants.
------------------------------------------------------------------------X

LEVY, United States Magistrate Judge:

               On December 19, 2005, the parties stipulated to a settlement in this case.  In the

stipulation, they agreed that the court would retain jurisdiction over the matter for purposes of

ruling on plaintiff's attorney's fee application.  On March 1, 2006, the parties consented to have

me decide plaintiff's application for attorney's fees and costs.[1]  For the reasons stated below,

plaintiff's motion for attorney's fees is granted and plaintiff is awarded $150,389.77 in

attorney's fees and $6,414.23 in costs.

## BACKGROUND

               The facts of this case were described in detail in Judge Sifton's Memorandum and

Order dated November 12, 2002, familiarity with which is assumed.  Briefly, plaintiff has been

employed as a civil servant for the City of New York since 1981.  (See Memorandum and Order,

---

[1] The Honorable Charles P. Sifton, United States District Judge, signed the consent order
on March 15, 2006.

dated Nov. 12, 2002 ("Order"), at 2.)[2] From 1986 through 1990, plaintiff was an electrician in the Bureau of Fire Communications of the New York City Fire Department ("Fire Department"). (Id. at 2-3; see also Third Amended Complaint, dated Nov. 7, 2003 ("Amended Compl."), ¶ 40.) From 1990 to the present, plaintiff has worked as an electrician for the Buildings Maintenance Division of the Fire Department. (Order at 3.) In 1994, the Buildings Maintenance Division took on all electrical responsibility for the Fire Department. (Id.)

Plaintiff has been a licensed master electrician since 1991. (Id.) In the event of a power failure, "brown out," "black out" or equipment malfunction, plaintiff has been responsible for ensuring that the loss of power does not disrupt communication within the Fire Department and will not impede the dispatch of fire equipment to the scene of an emergency. (Id.) Plaintiff has worked on light, heat and power in the communications offices. (Id.) He has also worked with diesel generators and battery back-up systems, which were designed to maintain power in the intervals between power failures and emergency electrical power generation. (Id.) Further, plaintiff has been responsible for testing and maintaining the "computer assisted dispatch system" and related equipment, such as voice alarms and alert tones. (Id. at 4.) He has maintained and tested the light and power for the tele-printer, voice alarms, still alarm bells, firehouse speakers, and intercom systems. He has also relocated and installed various wires, panels and communications equipment. (Id.) According to Judge Sifton's Memorandum and Order, plaintiff "is considered by his peers to be a dedicated and hard worker and a valuable employee." (Id. at 3.)

---

[2] In the Order, Judge Sifton assumed all facts alleged in the complaint to be true. (Order at 2.)

Beginning in the mid-1990's, plaintiff began reporting problems with the Fire Department's back-up power system that is used to communicate with Fire Department dispatchers in the event of an emergency and power failure. (Id. at 7-8; see also Plaintiff's Application and Declaration For Attorney's Fees, Costs and Expenses and Memorandum of Law in Support, dated Jan. 20, 2006 ("Solotoff Decl."), ¶ 5.) As a result of his whistleblowing activity, defendants allegedly treated plaintiff with malice, animosity, discrimination, harassment and retaliation, and created a hostile and offensive work environment. (Solotoff Decl. ¶ 7.)

In 1996, plaintiff filed six Office of Collective Bargaining ("OCB") petitions concerning, among other things, whistleblower claims; the safety of the back-up power system; the denial of overtime, assignments and promotions; and harassment related to his whistleblowing activity. (Order at 9.) More specifically, the OCB proceedings related to plaintiff's rights under the New York City Collective Bargaining Law ("NYCCBL"). Some of his petitions were directed at the International Brotherhood of Electrical Workers, Local 3 (the "Union"), and some were directed at the Fire Department. With respect to the Fire Department, plaintiff alleged that the Fire Department's agents: (1) interfered with his efforts to pursue grievances relating to overtime, including a refusal to accept his grievances; (2) leaked plaintiff's overtime complaints to other employees who might be adversely affected by plaintiff's grievances; (3) belittled plaintiff; and (4) discriminated and retaliated against plaintiff because of his grievance activity and his filing of improper practice petitions challenging FDNY's actions. (See OCB Decision and Order, attached as Ex. C to Solotoff Decl. ("OCB Order"), at 17.) Further, Fire Department supervisors allegedly: (1) threatened disciplinary procedures; (2) docked plaintiff's pay for time he spent related to filing grievances and improper practice claims;

(3) failed to consider his applications for supervisory positions; and (4) rejected plaintiff's continuing demand for equalization of overtime assignments. (Id. at 17-18.)

In 1998, plaintiff retained the law firm of Solotoff & Solotoff. (Solotoff Decl. ¶ 19.) Plaintiff filed the Complaint in this case on August 17, 2001; an Amended Complaint on September 18, 2001; a Second Amended Complaint on December 17, 2002; and a Third Amended Complaint on November 23, 2003. (Id.) In the initial complaint, plaintiff alleged that, because of his whistleblowing activity, he was (1) passed over for desirable positions, (2) physically threatened, (3) denied desirable assignments, (4) required to work with defective equipment, (5) denied transfers, and (6) falsely accused of wrongs he did not commit. (Order at 10-12.) Defendants filed a motion for partial dismissal on January 4, 2002. Judge Sifton dismissed all claims against the Fire Department on consent, and dismissed plaintiff's due process claim under 42 U.S.C. § 1983; his conspiracy claim under 42 U.S.C. § 1985; his conspiracy claim under 42 U.S.C. § 1986; his New York City whistleblower claim; and his claim of negligence. (Id. at 50-51.) Judge Sifton allowed all other claims to proceed. Plaintiff's Third Amended Complaint alleged violations of 42 U.S.C. § 1983 (discrimination, retaliation, free speech, due process, and equal protection violations); 42 U.S.C. § 1985; 42 U.S.C. § 1986; and the New York State whistleblower statute; as well as tortious interference with employment; intentional infliction of emotional distress; and retaliation in response to the filing of this lawsuit, beginning in August 2001. (Amended Compl. ¶¶ 166-262.) Roy Katz was the Assistant Commissioner of the Fire Department and Joseph Mastropietro has been the Director of the Fire Department's Buildings Maintenance Division since the inception of this case. (Id. ¶¶ 15, 21.) John Scupelliti, Anthony Bianchino, Bernard Gelman, James Campbell, Danniel Wallen and

Albert Somma were and are officers, managers, supervisors, stewards and personnel with the Fire Department.

According to plaintiff, defendants violated his civil rights throughout the OCB proceedings; thus, the basis for his allegations in the complaint stem from occurrences before and particularly during those proceedings. (Solotoff Decl. ¶ 11; <u>see</u> <u>also</u> Order at 10.) On October 30, 2003, the OCB found that the Fire Department and the Union illegally discriminated and retaliated against plaintiff and issued a Cease and Desist Order. After the parties settled this case in 2005, they stipulated that plaintiff is a "prevailing party" and is entitled to a fee award. (Solotoff Decl. ¶ 33.)

Plaintiff seeks attorney's fees for representation of his interests during all the proceedings had herein, which, according to plaintiff, include the administrative proceedings and the federal lawsuit. Plaintiff seeks $394,368.75 in attorney's fees, and $15,788.42 for costs, as well as a fee enhancement and post-settlement interest at the rate of 9% per annum. (<u>Id.</u> at 37.)[3]

Defendants object to plaintiff's application on a number of grounds, arguing: (1) plaintiff's attorneys have not demonstrated the reasonableness of their proposed hourly rates; (2) the hours billed by plaintiff's attorneys are excessive; (3) the costs billed by plaintiff's attorneys are excessive; (4) plaintiff is not entitled to recover fees incurred in connection with his administrative claims; and (5) plaintiff is not entitled to the requested fee enhancement or to post-settlement interest. (<u>See</u> Defendants' Memorandum of Law In Opposition to Plaintiff's Application for Attorney's Fees and Expenses, dated Feb. 24, 2006 ("Defs.' Mem.").)

---

[3] Plaintiff modified this request on March 9, 2006 to include time spent on the response to defendants' opposition. However, plaintiff's attorneys did not provide contemporaneous time records for those hours.

**DISCUSSION**

"The calculation of reasonable attorney's fees is a factual issue whose resolution is committed to the discretion of the district court." Saulpaugh v. Monroe Community Hosp., 4 F.3d 134, 145 (2d Cir. 1993). The rationale is that "[t]he trial judge is in a better position than an appellate court to appraise the need for and potential benefits derived from the attorney's services . . . ." Rosario v. Almagamated Garment Cutters' Union, 749 F.2d 1000, 1004 (2d Cir. 1984).

In the Second Circuit, applications for attorney's fees must be supported by contemporaneous time records specifying relevant dates, time spent and work done. See Cruz v. Local Union No. 3 of Int'l Bhd. of Elec. Workers, 34 F.3d 1148, 1160 (2d Cir. 1994); Lewis v. Coughlin, 801 F.2d 570, 577 (2d Cir. 1986); New York State Ass'n for Retarded Children, Inc. v. Carey, 711 F.2d 1136, 1148 (2d Cir. 1983). In determining reasonable attorney's fees, the court calculates a "lodestar" figure "by multiplying 'all reasonable hours expended by the prevailing party's attorney by a reasonable hourly rate.'" Bourgal v. Atlas Transit Mix Corp., 93 CV 0569, 1996 WL 75290, at *6 (E.D.N.Y. Feb. 7, 1996) (quoting Clarke v. Frank, 960 F.2d 1146, 1153 (2d Cir. 1992); DeFilippo v. Morizio, 759 F.2d 231, 234 (2d Cir. 1985)).

The United States Supreme Court has noted that courts may consider the following factors in making a fee determination: "(1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation,

and ability of the attorneys; (10) the 'undesirability' of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases."  Hensley v. Eckerhart, 461 U.S. 424, 430 n. 3 (1983) (citation omitted).

      A.  Hourly Rate

      Courts determine the reasonable hourly rate by looking to the hourly rate "'prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation.'"  Bourgal v. Atlas Transit Mix Corp., No. 93-CV-569, 1996 WL 75290, at *6 (E.D.N.Y. Feb. 7, 1996) (quoting Miele v. New York State Teamsters Conf. Pension & Ret. Fund, 831 F.2d 407, 409 (2d Cir. 1987)).  Determination of the prevailing market rates may be based on evidence presented or a judge's own knowledge of hourly rates charged in the community.  Chambless v. Masters, Mates & Pilots Pension Plan, 885 F.2d 1053, 1058-59 (2d Cir. 1989).

      Plaintiff's counsel maintains an office in Great Neck, New York, which is in this judicial district.  According to one recent case, "prevailing rates [in the Eastern District of New York] have ranged from $200-$300 for partners, $200-$250 for senior associates and $100-$150 for junior associates."  Morin v. Nu-Way Plastering, Inc., No. CV 03-405 (LDW)(ARL), 2005 WL 3470371, at *2 (E.D.N.Y. Dec. 19, 2005).  See also LaBarbera v. J.E.T. Resources, Inc., 396 F. Supp. 2d 346, 353 (E.D.N.Y. 2005) ("the reasonable rate for legal services in the Eastern District in 2005 would appear to be approximately $250 for partners, $150 for associates, and $60 for paralegals per hour."); Atlantic Recording Corp v. Elizabeth Records, Inc., 05 CV 2309 (SLT), 2006 WL 1027151, at *1 (E.D.N.Y. Apr. 14, 2006) (awarding $250 for a partner and $150 for an associate, and noting that "courts in this district have not been as generous as courts

in the Southern District of New York.").[4]

Even in the Southern District of New York, courts are reluctant to award over $400 per hour for experienced partners. See Trustees of the Eastern States Health and Welfare Fund v. Crystal Art Corp., No. 00 Civ. 0887, 2004 WL 1118245, at *6 (S.D.N.Y. May 19, 2004) (approving $350 per hour for named partner with approximately thirty years of litigation experience); Veltri v. Building Serv. 32B-J Pension Fund, No. 02 Civ. 4200, 2004 WL 856329, at *4 (S.D.N.Y. Apr. 20, 2004) (approving hourly rate of $325); I.L.G.W.U. Nat'l Retirement Fund v. ESI Group, Inc., No. 92 Civ. 0597, 2003 WL 135797, at *3 (S.D.N.Y. Jan. 17, 2003) (approving rate of $350 per hour for partner with over twenty years of experience, where work was first rate).

Plaintiff retained Solotoff & Solotoff in 1998 on an agreed hourly rate of $325 for partners, and $250 for associates, subject to annual rate adjustments. (Id. ¶ 31.) Lawrence Solotoff's rate ranged from $325 per hour in 1998 to $450 per hour in 2005. (Id., Ex. D.) Cheryl Solotoff's rate has remained at $375 per hour since 2001, while associate Darryn Solotoff's rate is $150 per hour. The plaintiff is, and always remains, obligated to pay attorney's fees for services rendered on his behalf. (Id. ¶ 32.) I find Lawrence and Cheryl Solotoff's

---

[4] The "prevailing community" that a district court should consider is usually "'the district in which the court sits,' unless there has been a showing that 'special expertise of counsel from a . . . [different] district was required.'" Cruz, 34 F.3d at 1159 (quoting Polk v. New York State Dep't of Correctional Servs., 722 F.2d 23, 25 (2d Cir.1983)). In this district, however, where lawyers from the Southern District frequently appear, the higher rates charged by Southern District attorneys have been awarded in Eastern District litigation. See, e.g., Tokyo Electron Arizona, Inc. v. Discreet Indus. Corp., 215 F.R.D. 60, 63 (E.D.N.Y. 2003); New Leadership Comm. v. Davidson, 23 F. Supp. 2d 301, 305 (E.D.N.Y. 1998). Since plaintiff's counsel's place of business is in Nassau County, it is not necessary or appropriate to consider typical Manhattan rates in this case.

hourly rates excessive in light of the prevailing hourly rates in the Eastern District of New York.[5]

Lawrence Solotoff is a partner with the law firm of Solotoff & Solotoff and has been in practice for over 32 years.  (Solotoff Decl. ¶ 72.)  He is an adjunct professor of law at Touro Law School and has published a treatise on sex discrimination in the workplace as well as a number of other employment law articles.  (Id. ¶ 75.)  He has extensive experience in employment litigation and has chaired or co-chaired a number of labor and employment law committees over the past twelve years.  (Id. ¶¶ 76-77.)  Considering that Mr. Solotoff has worked diligently on this case for over seven years, I find that he is entitled to be compensated at a rate of $325 per hour for work beginning in 1998.  See Gierlinger v. Gleason, 160 F.3d 858, 882 (2d Cir. 1998) (finding that where the services are performed many years before the award is made, the rates used by the court to calculate the lodestar should be current rather than historic hourly rates).

Cheryl Solotoff is a partner in the law firm of Solotoff & Solotoff and has been in practice for over 18 years.  (Solotoff Decl. ¶ 71.)  She has represented a variety of clients that include "corporations, partnerships, developers and individuals in business transactions."  (Id.)  Although she acted as co-counsel in some of the firms' labor and employment cases, it is unclear from plaintiff's submission whether Ms. Solotoff has a background in labor and employment law.  Additionally, she did not act as lead counsel in the numerous proceedings before this court.  I find that she is entitled to be compensated at a rate of $225 per hour for work beginning in

_____

[5] "[T]he presumption that the attorney's customary billing rate constitutes the market rate for his services under § 1988 may be rebutted by evidence that this rate exceeds the prevailing community rates . . . ."  Martin A. Schwartz and John E. Kirklin, Section 1983 Litigation 261- 64 (3d ed. 1997).  In this case, attorney's fees must be reasonable and comparable to hourly rates prevailing in the Eastern District of New York.

2001. Darryn Solotoff is an associate of counsel to the law firm of Solotoff & Solotoff and has been in practice for approximately one year. (Id.) He was admitted to practice law in the State of New York in 2005. Considering that he was admitted to the bar only a few months prior to performing research in this case, I find that he is entitled to be compensated at a rate of $100 per hour. See Morin, 2005 WL 3470371, at *2 (finding $100 to $150 a reasonable amount for junior associates).

B. Excessive Hours

According to the Supreme Court, the district court should exclude from the initial fee calculation hours that were not "reasonably expended." Hensley, 461 U.S. at 434. "Counsel for the prevailing party should make a good-faith effort to exclude from a fee request hours that are excessive, redundant or otherwise unnecessary . . . ." Id.

I. Block Billing, Duplicative and Unnecessary Attorney Work

Defendants contend that attorney time records should not include entries that lump together more than one activity. (Defs.' Mem. at 14.) Defendants allege that 334 hours are block-billed, "including every court appearance in which travel time and other items for non-legal work are incorporated and billed without any reduction." (Id. at 15.)

Courts have rejected "lumped billing entries where attorneys either combined items which should have been compensated at different hourly rates (such as time for travel to and attendance at meetings, where travel time was compensated at a lower rate), or mixed legitimate requests with requests for work which may not have been compensable at all." Hutchinson v. McCabee, 95 Civ. 5449 (JFK), 2001 WL 930842, at *4 (S.D.N.Y. Aug. 15, 2001). At the same time, the Supreme Court has cautioned that a "request for attorney's fees should not

result in a second major litigation" and "[p]laintiff's counsel, of course, is not required to record in great detail how each minute of his time was expended."  <u>Hensley</u>, 461 U.S. at 437, 437 n. 12.  Although the Second Circuit does not prohibit the practice of block billing, detailed fee applications are preferable.

In general, I find plaintiff's attorneys' time entries sufficiently specific and detailed.  (<u>See</u> Solotoff Decl., Ex. D.)  Although the time records contain some instances of block billing, I do not find those instances so extensive as to impede the court's assessment of the reasonableness of the hours spent on the litigation.  (<u>See</u> Declaration of Jane R. Goldberg, Esq., dated Feb. 24, 2006 ("Goldberg Decl."), Ex. 5.)  Therefore, I will not reduce the requested attorney's fees on that account.  <u>See</u> <u>Irish v. City of New York</u>, 98 Civ. 713, Civ. 9614 (BSJ) (RLE), 2004 WL 444544, at *8 (S.D.N.Y June 14, 2005).  Undisclosed travel time and blocks of time spent on the administrative proceedings will be discussed below.

Defendants also argue that plaintiff's attorneys should have billed clerical tasks, such as filing, at a lower hourly rate.  (Defs'. Mem. at 14-16, 21.)  Generally, clerical and secretarial services are considered part of overhead and are not charged to clients.  <u>Williams v. New York City Housing Auth.</u>, 975 F. Supp 317, 324 (S.D.N.Y. 1997).  However, courts disagree as to whether administrative tasks such as filing and service of papers can be included in a fee application.  <u>See</u> <u>Sulkowska v. City of New York,</u> 170 F. Supp. 2d 359, 369 (S.D.N.Y. 2001) (excluding filing, photocopying, mailing, faxing and service of papers from the fee application); <u>Society for Good Will to Retarded Children v. Cuomo</u>, 574 F. Supp. 994, 999 (E.D.N.Y. 1983) (finding that filing, delivery, and service of papers are "normally subsumed within an attorney's overhead"), <u>vacated on other grounds</u>, 737 F.2d 1253 (2d Cir. 1984).  <u>But</u>

see Pascuiti v. New York Yankees, 108 F. Supp. 2d 258, 267 (S.D.N.Y. 2000) (ordering that "faxing, filing, photocopying, and drafting affidavits of service" be compensated at $50 per hour) (citing Luciano v. Olsten Corp., 925 F. Supp. 956, 966 (E.D.N.Y. 1996) (finding that certain non-legal work, such as file organization, should be compensated at $50 an hour)).

On the other hand, it is clear that paralegal work is properly compensated, but at a lower hourly rate.  United States Football League v. National Football League, 887 F.2d 408, 416 (2d Cir. 1989).  Paralegal work generally includes preparation of trial exhibits, factual investigation, assistance with depositions, researching and cite checking.  Missouri v. Jenkins, 491 U.S. 274, 288 (1989); Sulkowska, 170 F. Supp. 2d at 366-69.  "Paralegal and law clerk billing rates ranging from $70 to $85 per hour are acknowledged to be well within reason." Williams, 975 F. Supp at 324.  See also McKay v. Barnhart, 327 F. Supp. 2d 263, 270-71 (S.D.N.Y. 2004) (finding that $75 per hour is the prevailing rate for paralegal work).

The court notes that plaintiff's counsel devoted approximately five hours to clerical and paralegal work.  (Goldberg Decl., Ex. 7.)  For the five hours involving faxing, filing, and drafting affidavits of service, the reasonable fee is $50 per hour.  See Pascuiti, 108 F. Supp. 2d at 267.  Courts have acknowledged that if an attorney representing the prevailing plaintiff is from a small law office and litigation support services, such as research and motion preparation, are performed by a partner out of necessity, then that attorney should not be penalized for time reasonably expended on such tasks.  Id. at 267-68.  Therefore, a further reduction in fees for these tasks is not warranted.

It appears defendants' primary complaint is that plaintiff's attorneys seeks

$410,157.17 for fees and expenses for a case that defendants characterize as "routine," and that

settled "with virtually no discovery and no depositions." (Defs.' Mem. at 16.) According to the

Second Circuit, a fee application should specify not only the hours expended, but also the

"nature of the work done." Kirsch v. Fleet St., Ltd., 148 F.3d 149, 173 (2d Cir. 1998). "Hours

that are excessive, redundant or otherwise unnecessary, are to be excluded, and in dealing with

such surplusage, the court has discretion simply to deduct a reasonable percentage of the number

of hours claimed as a practical means of trimming fat from a fee application." Id. at 173

(internal citations and quotations omitted). I agree to a certain extent with defendants on this

point. For example, an inordinate number of time entries involve an attorney's "review of the

file" or "review of the documents."[6] Further, it appears that travel time was incorporated and

billed without reduction. (Goldberg Decl., Ex. 6.) Counsel also billed an excessive amount of

time for "meetings with client" and "teleconferences with client." (Goldberg Decl., Exs. 12-13.)

A twenty percent reduction in plaintiff's attorneys' billing records is necessary to account for

work that was duplicative and excessive. See Kirsch, 148 F.3d at 173; Bridges v. Eastman

Kodak, 91 Civ. 7985 (RLC), 1996 WL 32325, at *6 (S.D.N.Y. Jan. 26, 1996). Similar to

Bridges, "[b]esides trimming the fat off of the fee application, this reduction will account for any

minor contested issues between the parties." 1996 WL 32325, at *6. A further reduction would

be unduly harsh; this court recognizes that civil rights plaintiffs occupy an important policy role

and plaintiff's attorneys did a commendable job.

---

[6] See Solotoff Decl. Ex. D-1. Entries that relate to a review of files, letters, transcripts, and documents (excluding "research" and "preparation") are dated: 10/9/1998; 11/14/1998; 11/15/1998; 11/24/1998; 1/18/1999; 3/18/1999; 2/7/2000; 2/15/2000; 5/15/2000; 5/21/2000; 2/19/2001; 2/26/2001; 5/19/2001; 2/13/2002; 2/14/2002; 1/29/2003; 1/30/2003; 3/3/2003; 5/27/300; 9/3/2003; 9/9/2003; 9/10/2003; 9/30/2003; 10/1/2003; 3/1/2004; 9/20/2004; 9/21/2004; 11/3/2004; 2/16/2005; 5/24/2005; 5/26/2005; 11/1/2005; 12/4/2005; and 1/2/2006.

II.  Media Coverage

Plaintiff's attorneys billed for "attention" to press coverage, such as letters to the *New York Law Journal* and *The Chief*.  Defendants argue that this time is not recoverable. (Defs.' Mem. at 22; see Bridges, 1996 WL 32325, at *7.)  The court finds that communication with the media is not recoverable, and accordingly, will deduct eight hours from the fee application.  (See Goldberg Decl., Ex. 14.)

III.  Claims Plaintiff Voluntarily Dismissed

Plaintiff seeks compensation for time spent on his claim against James Nickol, whom he voluntarily dismissed from the case on March 27, 2003.  Plaintiff also seeks compensation for hours expended on "substituting the representative of Roy Katz's estate as a party defendant following Mr. Katz's untimely death."  (Defs.' Mem. at 22.)  However, plaintiff never substituted the representative of Katz's estate and he withdrew the defamation claims against Katz in the Third Amended Complaint.  Defendants allege that, pursuant to Hensley, the portions of time plaintiff's attorneys spent pursuing these claims are not recoverable.  (Id. at 22-23.)  According to Hensley, "[w]here the plaintiff has failed to prevail on a claim that is distinct in all respects from his successful claims, the hours spent on the unsuccessful claim should be excluded in considering the amount of a reasonable fee."  461 U.S. at 440.  See also id. at 434 ("[A] plaintiff may present in one lawsuit distinctly different claims for relief that are based on different facts and legal theories.").

Defendant Nickol was represented by independent private counsel, and according to defendants, such work was not incurred on account of any claims against the City.  Plaintiff has failed to show how he was a prevailing party on this claim; therefore, the court will deduct

10 hours from the fee application.  (Goldberg Decl., Ex. 15.)  Further, plaintiff has failed to show

how research related to the substitution of Katz's estate is related to the overall claims on which

plaintiff prevailed.  Therefore, I will deduct 10 hours incurred with respect to the claim against

Katz.  (Goldberg Decl., Ex. 16.)

C.  Administrative Proceedings

According to defendants, plaintiff seeks to recover $176,168.75 for attorney's

fees and $11,101.50 in costs incurred in connection with the administrative proceedings.  (Defs.'

Mem. at 27.)  Defendants argue that plaintiff is not entitled to attorney's fees relating to the OCB

administrative proceedings.  They allege that the OCB proceedings "were intended to vindicate

plaintiff's employment rights created by state law, and are not prerequisites to his raising any of

his claims in this federal lawsuit.  Indeed, the entire administrative proceeding before the OCB

concerned whether plaintiff's rights under the New York City Collective Bargaining Law were

violated, not whether his civil rights were violated."  (Id. at 30.)  Additionally, defendants argue

that plaintiff's attorneys have failed to identify the "discrete portions" of work in connection

with plaintiff's administrative claims that were useful and necessary in advancing the federal

litigation.  (Id. at 31-38.)

Plaintiff's attorneys assert that the services and work performed for the

administrative proceedings were "inextricably intertwined and interlinked" with the federal

action.  (Plaintiff's Memorandum of Law in Response to Defendant's Memorandum of Law in

Opposition and in Further Support of the Application and Declaration for Attorney's Fees, Costs

and Expenses, dated Mar. 9, 2006 ("Pl.'s Reply Mem."), at 2.)[7]  Plaintiff's attorneys state that

---

[7] In their reply, plaintiff's attorneys excluded 12.25 hours of time that they acknowledge
(continued...)

the "facts and evidence of discrimination by City officials [during the OCB proceedings] is intertwined with his right of free speech, equal protection, and due process, and to seek whistleblower protection." (<u>Id.</u> at 8 n. 3.) They also argue that the OCB work was useful and of the type necessary to advance plaintiff's federal constitutional and statutory claims. According to plaintiff, the "OCB proceedings became the relevant method of discovery of documents, testimony and cross-examination of the plaintiff and defendant and key corroborating witnesses before, during and after the . . . litigation that paralleled the OCB proceedings and [led] to the Third Amended Complaint and settlement of this case." (Solotoff Decl. ¶ 18.)

According to Judge Sifton, plaintiff filed six OCB petitions concerning, among other things, "whistleblower claims related to his participation in the DOI [City's Department of Investigation] of [Supervisor Anthony] Bianchio, the safety and efficiency of the Fire Department back-up power system, and the denial of overtime, assignments, promotions, and related harassment resulting from plaintiff's whistleblowing activity." (Order at 9.) Judge Sifton found that the defendants named in the OCB proceedings "have each exhibited animosity towards plaintiff because he has pursued relief by these petitions." (<u>Id.</u> at 10; <u>see also</u> Amended Compl. ¶¶ 166-180.)

42 U.S.C. § 1988 provides:

> In any action or proceeding to enforce a provision of . . . [§ 1983] . . . the court, in its discretion, may allow the prevailing party, other than the United States, a reasonable attorney's fee as part of the costs.

In <u>Webb v. Board of Educ. of Dyer County, Tenn.</u>, 471 U.S. 234 (1985), the Supreme Court

---

[7](...continued)
was not transferable to the federal action.

considered whether attorney's fees were recoverable for optional administrative proceedings in a 42 U.S.C. § 1983 action.  In that case, an African-American elementary school teacher with tenure alleged that he had been unlawfully terminated because the County Board of Education had not provided him with written charges or a pre-termination hearing, and because the Board's actions were racially motivated.  Id. at 236-37.  After the case settled, the parties agreed that plaintiff was a "prevailing party" and plaintiff sought to recover attorney's fees pursuant to 42 U.S.C. § 1988.  Id. at 237-38.

The plaintiff sought to recover a fee award for his counsel's services during the school board proceedings on two theories: (1) that the administrative hearings "were '[proceedings] to enforce a provision of [§ 1983]' within the meaning of §1988"; or (2) "that the time was 'reasonably expended' in preparation for the court action and therefore compensable under the rationale of Hensley v. Eckerhart, 461 U.S. 424, 433 (1983)."  Webb, 471 U.S. at 239-40.  The Court found that, unlike a Title VII plaintiff, the plaintiff in Webb was not "required" to pursue available state remedies before commencing proceedings in federal court; as a result, the plaintiff was not automatically entitled to attorney's fees because "[a]dministrative proceedings established to enforce tenure rights created by state law simply are not any part of the proceedings to enforce § 1983. . . ."  Id. at 241.  Therefore, the plaintiff was not entitled to recover on his first theory.

As to his second theory of recovery, plaintiff contended that his work in the administrative proceedings "was analogous to discovery" and "reasonably expended" to enforce the rights protected by § 1983.  Id. at 242.  Therefore, he argued that time spent on the administrative proceedings was compensable as though the work had been performed after the

lawsuit was actually filed.  Id.  The Court also rejected the plaintiff's second theory, noting that

there was no "difficulty identifying the dividing line between the administrative proceeding and

the judicial proceeding" because the "five years of work before August 1979 [for the

administrative proceeding] were easily separated from the two years of work thereafter [for the

lawsuit]."  Id. at 243.

Thus, attorney's fees are generally not available for work performed in

administrative proceedings in § 1983 actions.  Id.  However, in a case after Webb, the Supreme

Court held that "even if the prior [administrative] proceeding is not a 'proceeding to enforce' one

of the § 1988 civil rights laws, the 'discrete portion of the work product from the administrative

proceedings' that 'was both useful and of a type ordinarily necessary to advance the civil rights

litigation to the stage it reached before settlement' can be part of the attorney's fees awarded

under § 1988."  North Carolina Dept. of Transp. v. Crest St. Community Council, Inc., 479 U.S.

6, 15 (1986) (quoting Webb, 471 U.S. at 243).  See also Tsombanidis v. W. Haven Fire Dep't,

352 F.3d 565, 581 (2d Cir. 2003); Murray v. Commissioner of N.Y. Dep't of Educ., 354 F. Supp.

2d 231, 239 (E.D.N.Y. 2005).  Therefore, it is counsel's duty to identify the "discrete portion" of

work from the administrative proceeding that was "useful" and "necessary" to advance his

client's federal claims.  North Carolina Dept. of Transp., 479 U.S. at 15.

While it may be that the "central focus" of Fabbricante's administrative claims

were against the City of New York and Fire Department officials (Pl.'s Reply Mem. at 8), I find

that based on the OCB decision, a sizeable portion of the administrative hearings and petitions

was devoted to petitioner's grievances with the Union, and not with the parties who are

defendants in this federal litigation.[8]   (See OCB Order at 2-8; 13; 16; 18-20; 22-30; 38.)

According to the OCB decision, plaintiff alleged that the Union violated the duty of fair

representation by refusing to file grievances concerning overtime and interfered with his pursuit

of overtime grievances.  (Id. at 29-30.)  In the OCB's Cease and Desist Order, half of the specific

orders are directed towards the Union.  (Id. at 38-39.)  The allegations and rulings against the

Union clearly are not related to this proceeding.

Further, as stated above, all of the OCB proceedings relate to plaintiff's rights

under the NYCCBL.  With respect to the Fire Department, those allegations included

discrimination against plaintiff for his participation in the activities of a public employee

organization and for his filing of grievances and improper practice petitions.  (Id. at 17.)[9]  At the

hearing before the trial examiner, plaintiff's attorneys argued that "any information about

[plaintiff's federal claim] was *irrelevant* to the improper practice claims in the [administrative

proceedings] and might be prejudicial to [plaintiff's] federal claims."  (Id. at 22.) (emphasis

added).  The OCB members agreed, noting that:

> Even if the claims in the federal case arose from the same factual
> circumstances as those in the instant proceedings, they are based
> on the assertion of legal rights that are entirely different from the
> claims asserted here. [Plaintiff] has consistently and clearly cited
> the improper practice provisions of the NYCCBL as the source of
> his rights in the proceedings before us.  This Board has exclusive
> original jurisdiction over these claims . . .; it does not have
> jurisdiction over the statutory and constitutional claims raised in
> the federal court action.  For this reason, *evidence and testimony
> about the federal claims was irrelevant*.

---

[8] Some of the individuals mentioned in the OCB decision are the same individuals being
sued in this litigation.  However, the OCB allegations against those individuals relate to a
violation of the duty of fair representation and other NYCCBL provisions.

[9] See Background section for the specific allegations.

(Id. at 22-23) (emphasis added).  See Barrow v. Falck, 977 F.2d 1100, 1104 (7th Cir. 1992) ("[R]ights under labor contracts and local civil service laws do not arise under the Constitution or federal statutes, and efforts to secure their benefits in state forums are not 'proceedings to enforce' § 1983.").  See also Amended Compl. ¶ 80 ("OCB determines . . . whether plaintiff was the victim of illegal anti-union discriminatory intent, retaliatory action, and motives, culminating in improper practices in violation of [the] NYCCBL.").

At the same time, it is difficult to say that the OCB proceedings had no effect on the federal litigation, and that there were no related factual issues.  As plaintiff states, "[t]he facts and evidence of discrimination by City officials [during the OCB proceedings] [are] intertwined with his right of free speech, equal protection, and due process, and to seek whistleblower protection."  (Pl's. Reply Mem. at 8 n. 3; see also Order at 9-10.)  Unlike in Webb, it is difficult if not impossible to separate all the time spent on the OCB proceedings from the time spent on the federal litigation, as the two matters often proceeded concurrently, with some of the same issues and defendants.  It does appear that the OCB proceedings may have obviated the need for certain discovery in the federal litigation.  (See Solotoff Decl. ¶¶ 15-18, 27-29.) Therefore, while plaintiff is not entitled to a blanket award for time spent at the administrative level, he is "entitled to an award for the hours his attorney spent at the administrative level which substituted for work that would have been required for the federal litigation."  Van Kast v. Board of Educ., No. 87 C 2582, 1988 WL 142247, at *4 (N.D. Ill. Dec. 27, 1988) (noting that the calculation of the fee "must focus on the reasonable time for work that would have been required of plaintiff [in the federal litigation] by other means, i.e., through deposition and affidavit testimony, and it must not exceed the time actually spent.").

Courts have held that "[a]ttorney's fees may be granted for investigative work that was used for and, in fact, gave rise to the pending 42 USC § 1983 action" to the extent it "'proved directly relevant to the successful prosecution of the later civil rights' action." Schlimgen v. City of Rapid City, 83 F. Supp. 2d 1061, 1071 (D.S.D. 2000) (quoting McDonald v. Armontrout, 860 F.2d 1456, 1461-62 (8th Cir. 1988)). However, as defendants note, plaintiff has not identified the "discrete portion" of work from the OCB proceedings that might be compensable, and it is his burden to do so. (Defs.' Mem. at 32-33.) See Clark v. Board of Educ., 907 F. Supp. 826, 830 (D.N.J. 1995) ("The burden is upon the prevailing party to establish that the services for which it seeks fees actually advanced the civil rights litigation."). In Clark, the court denied fees for attorney time spent on the administrative proceeding, noting that "plaintiff's counsel argue[d], in the most conclusory of terms, that every task which they performed while defending plaintiff during the administrative proceeding and the subsequent appeals was necessary to plaintiff's civil right litigation, and thus, is compensable." 907 F. Supp. at 830. The court emphasized plaintiff's "burden," stating that it "is incumbent upon the prevailing party to submit a request for legal fees which permits the court to determine which fees were incurred in pursuing the federal litigation." Id. at 829.

While it may be that the OCB proceedings were intertwined with the federal litigation, plaintiff has failed to satisfy this burden, as he has not identified the discrete portions of work that contributed to the federal litigation. For example, in 2000, entries include: "teleconference with client;" "teleconference with ALJ;" "preparation of witness statement and testimony;" "[a]ttend second day of [administrative] trial;" "attend to [administrative] trial;" and "[p]reparation for subpoenas of witnesses." (Solotoff Decl., Ex. D-1.) Without more

21

information, this court is not in a position to know whether each time entry was "both useful and of a type ordinarily necessary to advance the civil rights litigation to the stage it reached before settlement." Webb, 471 U.S. at 243; see Murray, 354 F. Supp. 2d at 239. See also Clark, 907 F. Supp. at 831 ("the Court is unwilling to assume that every single phone call and every conference was inextricably linked to plaintiff's civil rights litigation.").

In the reply declaration, plaintiff's attorneys amended their fee application to "exclude from the request those fees incurred that were particular to the OCB proceeding and could not be transferred to the district court action." (Plaintiff's Response to Defendant's Opposition and In Further Support of Plaintiff's Application and Declaration for Attorneys Fees Costs and Expenses, dated Mar. 9, 2006 ("Solotoff Reply Decl."), at 1.) Yet, plaintiff's attorneys excluded only 12.25 hours from the amended application. Although they also provided some details regarding claims against Roy Katz and Joseph Mastropietro, I find that they still have not satisfied their overall burden, as required by Webb and Clark. Nonetheless, I am persuaded that it would be inequitable to exclude compensation for all of the time spent on the OCB proceedings.

Having thoroughly reviewed both parties' submissions and the relevant case law, I find that for time spent prior to 2001, 75% of Lawrence Solotoff's fees are not recoverable, either because they are completely unrelated to the federal litigation or they are not documented in a manner that allows the court to determine whether the OCB work substituted for work that would have been required for the federal litigation. However, counsel will be permitted to recover 25% of the fees incurred with respect to the OCB proceedings prior to 2001, as there is evidence that those tasks aided with the prosecution of the federal litigation. I also find that 30%

of the work performed by Lawrence Solotoff in 2001 is not recoverable in this case, and that 30% of the work performed by Lawrence Solotoff in 2003 is not recoverable for the same reasons noted above.

D. Costs

Plaintiff seeks $15,788.42 in costs. (See Solotoff Decl, Ex. D-4.) Defendants argue that costs associated with attorney travel, the transcripts from the administrative proceedings, and Dr. Salvatore Ambrosino's expert witness fees should be denied because those expenses are "undocumented and excessive." (Defendants' Sur-Reply Memorandum of Law in Further Opposition to Plaintiff's Application for Attorney's Fees and Expenses, dated Apr. 12, 2006 ("Defs.' Sur-Reply"), at 6.) Defendants also note that plaintiff does not "address or substantiate the $3,500 charged for 'photocopying, phone and fax fees and expenses from October 1998 to the present.'" (Id. at 8.) Further, defendants argue that costs associated with the administrative proceedings are not recoverable.

With regard to Dr. Ambrosino's expert witness fees, defendants correctly object to the inclusion of these fees in the reimbursement award. In a Section 1983 case, "the Court lacks the authority to reimburse for expert fees." Duke v. County of Nassau, 97 CV 1494, 2003 WL 23315463, at *7 (E.D.N.Y. Apr. 14, 2003) (quoting Connor v. Ulrich, 153 F. Supp. 2d 199, 203 (E.D.N.Y. 2001)). Further, plaintiff has not provided adequate proof to substantiate this charge. Therefore, costs for Dr. Ambrosino's services will not be charged to the defendants.

Plaintiff's attorneys also request $40 for each time they "travel[ed] to/from Brooklyn, tolls and parking" for conferences with the court. (Solotoff Decl., Ex. D-4.) They allege that driving was the most expeditious and economical means of travel as it costs far less

than round-trip tickets on the Long Island Rail Road ("LIRR") or subways. The court disagrees.

A package of ten trips off-peak from Great Neck to Penn Station on the LIRR costs $48.45, and

ten trips during peak time costs $78.38. (See http://lirr42.mta.info/Fares.asp (last visited

6/2/2006).) Thus, combined with subway fare, one round trip to Brooklyn costs, at most,

approximately $20.00. Further, plaintiff's attorneys do not provide receipts or documentation

verifying the cost of these trips. Therefore, the court will reduce the cost of every trip made to

and from court by 50%.

Defendants argue that plaintiff should not recover for costs incurred during the

administrative proceedings as "plaintiff has not demonstrated that such costs were . . . necessary

or useful to the pursuit of the federal litigation." (Defs.' Mem. at 24.) I find that 25% of the

costs incurred during 2000 are not recoverable, as they relate to the administrative proceedings

and plaintiff's attorneys have not demonstrated that such costs were necessary or useful to the

pursuit of the federal litigation. (See Goldberg Decl., Ex. 17.)[10]

Plaintiff also seeks $3,500 for "[p]hotocopying, phone and fax fees and expenses

from October 1998 to present." (Solotoff Decl., Ex. D-4.) "Identifiable, out-of-pocket

disbursements for items such as photocopying, travel, and telephone costs are generally taxable

under § 1988 and are often distinguished from nonrecoverable routine office overhead, which

must normally be absorbed within the attorney's hourly rate." Kuzma v. I.R.S., 821 F.2d 930,

933-34 (2d Cir. 1987). While this court recognizes that such costs are normally billable

---

[10] Entries in 2000 include court reporter transcript fees for witnesses who were not parties
to this litigation. Further, although some of the witnesses were parties to this litigation, plaintiff
has failed to demonstrate how specific testimony was "useful" and of a type "ordinarily
necessary to advance the civil rights litigation to the stage it reached before settlement." North
Carolina Dept. of Transp. 479 U.S. at 15.

expenses, plaintiff has the burden of demonstrating the reasonableness of each charge. Plaintiff has not provided receipts or other documentation substantiating these charges. In light of plaintiff's attorneys' vagueness and lack of documentation, the above costs are reduced by 75%. See E-Lead Elec. Co. v. Tecnozone Enters., LLC, No. 03 Civ. 4901, 2004 WL 2186539, at *3 (S.D.N.Y. Sept. 29, 2004) (no expenses allowed when attorney seeking reimbursement did not provide any documentation supporting the expenses; there was no line-item breakdown or breakdown of the total expenditure amount).

The court finds the remaining costs reasonable and well-documented.

E. Interest and Fee Enhancement

Plaintiff also moves, pursuant to Fed. R. Civ. P. 59(e) to amend the judgment to include post-settlement interest and a fee enhancement. (Solotoff Decl. ¶ 83.) Although Section 1983 does not specifically provide for interest, "in a suit to enforce a federal right, the question of whether or not to award . . . interest is ordinarily left to the discretion of the district court." Gierlinger, 160 F.3d at 873. In determining whether a discretionary award of interest is warranted, the court must consider: "(1) the need to fully compensate the wronged party for actual damages suffered, (2) considerations of fairness and the relative equities of the award, (3) the remedial purpose of the statute involved, and/or (4) such other general principles as are deemed relevant by the court." Wickham Contracting Co. v. Local Union No. 3, Int'l Brotherhood of Elec. Workers, 955 F.2d 831, 833 (2d Cir. 1992). The underlying purpose of post-settlement interest is to fully compensate the plaintiff, or make him whole, but it should not result in over-compensation. Id. at 834. Plaintiff has not provided any basis for recovery of the post-settlement interest that he seeks; accordingly, that request is denied.

Plaintiffs' attorneys also seek a fee enhancement due to the risk in pursuing this matter and the extended delay in payment. (Solotoff Decl ¶ 83.) There is a strong presumption that the lodestar figure represents the reasonable fee. Bridges, 1996 WL 32325, at *12. In this case, a fee enhancement is not justified because an enhancement is already reflected in the hourly rate and the number of hours charged by plaintiff's attorneys. Krieger v. Gold Bond Bldg. Prods., 863 F.2d 1091, 1099-1100 (2d Cir. 1988). Accordingly, plaintiff's request is denied.

F. Summary

In sum, fees are hereby awarded as follows:

Lawrence Solotoff

| 1998 | 37.5 hours x $325 = $12,187.50 |
| | - 75% = $3,046.87[11] |
| | |
| 1999 | 40 hours x $325 = $13,000 |
| | - 75% = $3,250 |
| | |
| 2000 | 231.75 hours x $325 = $75,318.75 |
| | - 75% = $18,829.69 |
| | |
| 2001 | 95.75 hours x $325 = $31,118.75 |
| | - 30% = $21,783.12 |
| | |
| 2002 | 136.5 hours x $325 = $44,362.50 |
| | |
| 2003 | 173.50 hours x $325 = $56,387.50 |
| | - 30% = $39,471.25 |
| | |
| 2004 | 81.25 hours x $325 = $26,406.25 |
| | |
| 2005 | 78.25 hours x $325 = 25,431.25 |
| | |
| 2006 | 30.25 hours x $325 = $9,831.25 |

---

[11] 75% of the hours billed by Lawrence Solotoff in 1998, 1999 and 2000 have been deducted for time spent on administrative proceedings either because those hours are non-compensable or because the entries and attorney's fee application lacked specificity. 30% of the hours billed in 2001 and 2003 have been deducted for the same reason.

Other Deductions
-20 hours x 325 = -$6,500[12]
- 8 hours x 325 = -$2,600[13]
- 5 hours x 325 = $1,625 + 5 hours x $50 = $250 = -$1,375[14]

Lawrence Solotoff Total = $181,937.18


Cheryl Solotoff
2001    .25 hours x $225 = $56.25

2004    5 hours x $225 = $1,125

2005    12.75 hours x $225 = $2,868.75

2006    4 hours x $225 = $900

Cheryl Solotoff Total = $4,950

Darryn Solotoff
2005    11 hours x $100 = $1,100

Darryn Solotoff Total = $1,100

Attorney Fee Sub-Total = $187,987.17
- 20% for excessive and duplicative entries

Attorney Fee Grand Total = $150,389.77

Costs
1999    $20[15]

2000    $5,236.75
        -25% = $3,927.56

2001    $471.92

2002    $116

---

[12] Twenty hours billed by Lawrence Solotoff have been deducted for unrelated and unsuccessful claims.

[13] Eights hours billed by Lawrence Solotoff have been deducted for media coverage.

[14] Five hours billed by Lawrence Solotoff have been charged at a paralegal rate.

[15] All travel costs to and from court have been reduced by 50%.

2003    $613.75

2004    $227[16]

2005    $163

2006    $875[17]

Total Costs = <u>$6,414.23</u>

CONCLUSION

For the reasons stated above, plaintiff's motion for attorney's fees is granted, and plaintiff is awarded $150,389.77 in attorney's fees and $6,414.23 in costs.

SO ORDERED.

_____
/s/
ROBERT M. LEVY
United States Magistrate Judge

Dated: Brooklyn, New York
        September 5, 2006

---

[16] Costs for Dr. Ambrosino's services are not compensable.

[17] 75% of the photocopying, phone and fax fees are not recoverable, as plaintiff has not provided any documentation or receipts for these charges.